IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

11 JAN -7 PM 2: 55

CLERK-ALBUQUERQUE

| | |
|---|---|
| Edward O'Finnegan, | CIVIL ACTION |
| Plaintiff, ProSe' | NUMBER 2010-CV-965 |
| -versus- | JUDGE WJ / LFG |
| CAPITAL ONE AUTO FINANCE, | TRIAL BY JURY DEMANDED |
| Defendant | |

## MOTION IN OPPOSITION TO MOTION TO DISMISS
## TO: CAPITAL ONES MOTION TO DISMISS

1.    Comes now the Plaintiff Edward O'Finnegan, Pro'Se, and hereby submits his opposition to the Defendant Capital One Auto to Dismiss.

2.    **Note:** No action under DCPA is asserted against the Defendant Capital One Auto.

3.    The Plaintiff brings this action against the Defendant as a result of Defendant's Capital One Auto, violations of the Fair Credit Reporting Act **15 U.S.C. § 1681** and Telephone Consumer Protection Act **47 U.S.C. § 227**.

4.    This case is not about any alleged monies, alleged monies owed, or alleged accounts, or judgments but rather what Defendant Capital One Auto, did or did not do when challenged under the FCRA & TCPA. FCRA laws are geared directly at the provider of information to credit reporting agencies and their failure at compliance.  TCPA laws provide protection to consumers against any person making any call using an automatic dialing system or an artificial or prerecorded voice to cellular telephone services.

5.    It is what they are supposed to do when challenged in credit reporting and not about accounts owed or claimed to be owed. Where is the term "money" or debt in the FCRA? There exists, the word "debt collector," because any consumer, such as this Plaintiff, has

the right to challenge the "debt collector and or providers of information such as the Defendant.

6.    Defendant claims there is no private right of action under 15 U.S.C. § 1681s-2(a), which governs the duty of furnishers. The TCPA clearly provides private right of action under **47 U.S.C. § 227 (b)(3)**. The Plaintiff will clarify the law from the FCRA

7.    **§ 602. Congressional findings and statement of purpose [15 U.S.C. § 1681]**

8.    (a) *Accuracy and fairness of credit reporting.* The Congress makes the following findings:

9.    (1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

10.    **§ 603. Definitions; rules of construction [15 U.S.C. § 1681a]**

11.    (a) Definitions and rules of construction set forth in this section are applicable for the purposes of this title.

12.    (b) **The term "person" means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity.**

13.    (c) **The term "consumer" means an individual.**

14.    **617. Civil liability for negligent noncompliance [15 U.S.C. § 1681o]**

15.    (a) *In general.* **Any person** who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of

16.     (1) any actual damages sustained by the consumer as a result of the failure; and

17.     (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

18.     (b) *Attorney's fees.* On a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

19.     **§ 623. Responsibilities of furnishers of information to consumer reporting agencies**

20.     [15 U.S.C. § 1681s-2]

21.     **(a) Duty of Furnishers of Information to Provide Accurate Information**

22.     (1) Prohibition

23.     (A) *Reporting information with actual knowledge of errors.* A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the

24.     information is inaccurate.

25.     (B) *Reporting information after notice and confirmation of errors.* A person shall not furnish information relating to a consumer to any consumer reporting agency if

26.     (i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and

27.     (ii) the information is, in fact, inaccurate.

28.     (C) *No address requirement.* A person who clearly and conspicuously specifies to the consumer an address for notices referred to in subparagraph (B) shall not be subject to subparagraph (A); however, nothing in subparagraph (B) shall require a person to specify such an address.

29.     (D) *Definition.* For purposes of subparagraph (A), the term "reasonable cause to believe that the information is inaccurate" means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information.

30.     (2) *Duty to correct and update information.* A person who

31.     (A) regularly and in the ordinary course of business furnishes information to one

32.     or more consumer reporting agencies about the person's transactions or

33.     experiences with any consumer; and

34.     (B) has furnished to a consumer reporting agency information that the person determines is not complete or accurate, shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

35.     (3) *Duty to provide notice of dispute.* If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the

information to any consumer reporting agency without notice that such

information is disputed by the consumer.

**36.** **Case Law to Support private right of action under 15 U.S.C. § 1681s-2(a),**

37. Dornhecker ro. Ameritech Corp., 99 F. Supp. 2d 918 (N.D. Ill. 2000).

38. A U.S. district court held that the Fair Credit Reporting Act (FCRA), 15 U.S.C. 1681 et

seq., permits consumers to bring private causes of action against furnishers of

information to credit reporting agencies who fail to properly investigate disputed credit

information.

39. Here, a telephone services provider opened phone service accounts on behalf of third

persons who fraudulently used the names of other individuals. The provider subsequently

enlisted the services of collection agencies to satisfy the debts on the accounts. After

being made aware of the debts, the individuals whose names had been used notified the

credit reporting agencies of the fraud. After the individuals, collection agencies, and

credit reporting agencies notified the provider of the dispute, the provider reportedly

failed to investigate. The individuals sued the provider, alleging, among other claims, that

Defendant violated 1681s-2(b)(1) of the FCRA by failing to properly investigate the

disputed credit information. Defendant moved to dismiss, arguing that plaintiffs lacked

standing because the FCRA does not create a private right of action for consumers.

40. Denying the motion, **the court agreed with the U.S. Supreme Court's analysis**-set

forth in Cort v. Ash, 95 S. Ct. 2080 (1975) for determining whether an implied private

right of action exists under a statute. The four factors are: whether (1) the plaintiff is a

member of a class for whose benefit the statute was enacted; (2) the legislative history

indicates congressional intent, explicit or implicit, either to create or deny such a remedy; (3) implying a private remedy would frustrate the underlying purposes of the legislative scheme; and (4) the cause of action is one traditionally relegated to state law.

41. **May it please the Court:** the Plaintiff has disputed with the Defendant Capital One Auto and The Credit Reporting Agencies in the same time period and has attached proof to this Motion of these mailings via certified mail to both the Defendant and the credit bureaus. The question is that during the investigation did the Defendant "talk" to the Bureaus and vice versa how does anyone know without proof? Defendant claims they did an investigation this is hearsay no proof other than their statement. Why did the Defendant not provide this alleged investigation information to the Plaintiff after they had done their alleged investigation? Most likely if they had it may have prevented this suit.

42. **FCRA PROVIDES PRIVATE CAUSE OF ACTION AGAINST FURNISHER OF INFORMATION**

43. Gordon v. Greenpoint Credit, 266 F.Supp.2d 1007 (S.D.Iowa2003).

44. IN THE UNITED STATES DISTRICT COURT

45. FOR THE EASTERN DISTRICT OF PENNSYLVANIA

46. RICHARD L. SHEFFER, :

47. Plaintiff, : CIVIL ACTION:

48. v. :

49. EXPERIAN INFORMATION :

50. SOLUTIONS, INC., et al., : No. 02-7407

51. Defendants. :

52. MEMORANDUM AND ORDER

53.   SCHILLER, J. February , 2003

54.   In its motion, Sears contends that Plaintiff's claim under the FCRA should be dismissed

       because consumers have no private right of action against a credit furnisher under 15

       U.S.C. § 1681s-2(b). In the alternative, Sears argues that Mr. Sheffer's allegations are

       legally insufficient because Plaintiff has failed to allege that a credit reporting agency has

       sent a dispute verification form to Sears. Sears also moves for the dismissal of Mr.

       Sheffer's defamation claim, arguing that the claim is preempted by the FCRA.

55.   With respect to the issue of whether § 1681s-2(b) creates a cause of action for a consumer

       against a furnisher of credit information, Sears correctly notes that courts have reached

       different conclusions. However, a clear majority of courts that have addressed this issue

       has "effectively recognized Congress' obvious intent [to] create a private cause of action

       through § 1681s-2." *Vazquez-Garcia v. Trans Union De P.R., Inc.*, 222 F. Supp. 2d 150,

       155 (D.P.R. 2002); *see also Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057,

       1058 (9th Cir. 2002) (describing purpose of § 1681s-2(b) as "provid[ing] some private

       remedy to injured consumers"). The reasoning in support of the majority view has been

       aptly summarized:

56.   The civil liability sections, 15 U.S.C. § 1681n and 1681o, explicitly provide a private

       right of action for consumers wishing to enforce any provision of the Fair Credit

       Reporting Act against "any person" who either "willfully fails to comply" or is "negligent

       in failing to comply." Absent any explicit limitation, the plain language of 15 U.S.C. §§

       1681n, 1681o, 1681s-2(b) and (c) provide a private right of action for a consumer against

       furnishers of information who have willfully or negligently failed to perform their duties

       upon notice of a dispute. Furthermore, the negative inference of explicitly precluding a

consumer's right of action for violations of § 1681s-2(a) is that they are preserved in § 1681s-2(b). Accordingly, the plain language of the Fair Credit Reporting Act compels the conclusion that there is a private right of action for consumers to enforce the investigation and reporting duties imposed on furnishers of information.

57.    **Defendant** Capital One Auto, **that the Plaintiff Fails to State a Claim upon which relief can be granted:**

58.    In considering a motion to dismiss for failure to state a claim upon which relief can be granted, courts must accept as true all of the factual allegations pleaded in the complaint and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc.*, 237 F.3d 270, 272 (3d Cir. 2001).

59.    Furthermore, a motion to dismiss will only be granted if it is clear that relief cannot be granted to the Plaintiff under any set of facts that could be proven consistent with the complaint's allegations. *See  Hishon v. King & Spalding*, 467U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Erickson*, 127 S.Ct. at 2200.

60.    **In *Erickson*...**

61.        ***In Erickson,*** the Supreme Court stressed the ***pro se*** status of the plaintiff in *Erickson* — a far cry from the highly sophisticated antitrust counsel in *Bell Atlantic*: The Court of Appeals' departure from the liberal pleading standards set forth by Rule 8(a)(2) is even more pronounced in this particular case because petitioner has been proceeding, from the litigation's outset, without counsel.  A document filed pro se is "to be liberally construed," *Estelle [v. Gamble],* 429 U.S. [97] at 106, 97 S.Ct.

285, and " a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *ibid.* (internal quotation marks omitted). Cf. Fed. Rule Civ. Proc. 8(f) (".... All pleadings shall be so construed as to do substantial justice").

62.     **And**

63.     Federal Rule of Civil Procedure 8(a)(2) requires only " a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the Co-Defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, ----, 127 S.Ct. 1955, --- L.Ed.2d ----, ---- - ---- (2007) (slip op., at 7-8) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).  In addition, when ruling on a Defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp., supra*, at 1955, 127 S.Ct. 1955 (slip op., at 8-9) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002);  *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989);  *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).  *Erickson*, 127 S.Ct. at 2200.

64.  **Summation:**

65.  The Plaintiff has disputed with the Furnisher/Defendant and the Credit Bureaus in the same time frame certified mailings attached.

66.     The OCC, Federal Reserve Board, FDIC, OTS, NCUA, and the FTC (Agencies) issued a
        joint final rule (Final Rule) under Section 312 of the Fair and Accurate Credit
        Transactions Act of 2003 (FACT Act), which amends the Fair Credit Reporting Act
        (FCRA). Section 623 of the FCRA describes the responsibilities of persons that furnish
        information about consumers (furnishers) to credit reporting agencies (CRAs). The Final
        Rule addresses the accuracy and integrity of reported information and furnishers'
        responsibility to reinvestigate disputes based on direct disputes from consumers.
        Furnishers are also required to establish policies and procedures to implement the
        requirements.

67.     **The Final Rule became effective on July 1, 2010.**

68.     **Policies and Procedures**

69.     The Final Rule requires furnishers to establish and implement reasonable written policies
        and procedures regarding the accuracy and integrity of information about consumers
        furnished to a CRA. The policies and procedures must be appropriate to the nature, size,
        complexity, and scope of the furnisher's activities.

70.     Furnishers must consider the accuracy and integrity guidelines (in the Appendix of each
        Agency's regulation) in developing policies and procedures. Furnishers must also review
        them periodically and update them as necessary, but an audit requirement is not imposed.
        Not all of the guidelines must be implemented.

71.     According to the guidelines, furnishers' policies and procedures should identify areas that
        compromise the accuracy or integrity of reported information, evaluate the effectiveness

of existing policies and procedures, consider the need for changes, and evaluate the effectiveness of how information is provided to CRAs, making changes as necessary.

72.    The elements of a furnisher's policies and procedures should include how consumer information is reported, maintaining records [1], maintaining internal controls, training, oversight, furnishing consumer information in connection with mergers and other transactions, data integrity, dispute resolution, controls related to consumer reports furnished to CRAs, conducting periodic evaluations of procedures, and complying with applicable laws and regulations.

73.    **Key Definitions**

74.    *Accuracy.* The term "accuracy" is defined as information that a furnisher provides to a CRA about an account or other relationship with the consumer that correctly:

75.    •   reflects the terms of and liability for the account or other relationship;

76.    •   reflects the consumer's performance and other conduct with respect to the account or other relationship; and

77.    •   identifies the appropriate consumer.

78.    The term "without error" was proposed but not included in the Final Rule because it would imply such high standards that the Agencies feared it might lead some persons to limit furnishing information to CRAs. The adopted "correctly reflects" standard is intended to achieve a high degree of accuracy without creating litigation risks.

79.    *Integrity.* Information furnished to a CRA may be technically accurate yet lack "integrity" because it presents a misleading picture of the consumer's creditworthiness if critical

information is omitted. The term "integrity" is defined as information that a furnisher provides to a CRA about an account or other relationship with the consumer that:

80. • is substantiated by the furnisher's records at the time it is furnished;

81. • is furnished in a form and manner that is designed to minimize the likelihood that the information may be incorrectly reflected in a consumer report; and

82. • includes the information in the furnisher's possession about the account or other relationship that the relevant Agency has:

83. • determined that the absence of which would likely be materially misleading in evaluating a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living; and

84. • listed in section I.(b)(2)(iii) of the guidelines. (This section provides one item on this list: the credit limit, if applicable and in the furnisher's possession) [2].

85. Each Agency will determine, and list in its guidelines, the types of information in a furnisher's possession that must be provided to promote the integrity of the information. This list will be based on the Agency's determination that the absence of the information would likely be materially misleading. In the preamble to the Final Rule, the Agencies note that, as furnishing information under the FCRA is voluntary, the definition of integrity applies only to information that the furnisher elects to provide to a CRA. The phrase "standardized and clearly understandable form" was proposed but not included in the Final Rule, but this notion is included in the guidelines.

86. *Furnisher.* The term "furnisher" means an entity that furnishes information relating to consumers to one or more CRAs for inclusion in a consumer report. An entity is not a furnisher when it:

87.  • provides information to a CRA solely to obtain a consumer report;

88.  • is acting as a CRA (e.g., resellers);

89.  • is a consumer to whom the furnished information pertains (i.e., through self-
       reporting); or

90.  • is a neighbor, friend, or associate of the consumer, or another individual with whom
       the consumer is acquainted or who may have knowledge about the consumer, and
       who provides information about the consumer's character, general reputation,
       personal characteristics, or mode of living in response to a specific request from a
       CRA.

91.  The last exception parallels the types of information that are collected in connection with
     an investigative consumer report, and is deemed necessary to avoid disrupting those
     activities.


92.  **Direct Dispute/Investigation**

93.  A furnisher is now required to conduct a reasonable investigation if a consumer directly
     disputes certain information contained in a consumer report. "Direct dispute" means a
     dispute submitted directly to a furnisher (including a furnisher that is a debt collector) by
     a consumer concerning the accuracy of any information contained in a consumer report
     and pertaining to an account or other relationship that the furnisher has or had with the
     consumer. A furnisher is required to conduct a reasonable investigation if the dispute
     relates to:

94.  • the consumer's liability for a credit account or other debt with the furnisher, such as
       direct disputes relating to whether there is or has been identity theft or fraud against

the consumer, whether there is individual or joint liability on an account, or whether the consumer is an authorized user of a credit account;

95. • the terms of a credit account or other debt with the furnisher, such as direct disputes relating to the type of account, principal balance, scheduled payment amount on an account, or the amount of the credit limit on an open-end account;

96. • the consumer's performance or other conduct concerning an account or other relationship with the furnisher, such as direct disputes relating to the current payment status, high balance, date a payment was made, the amount of a payment made, or the date an account was opened or closed; or

97. • any other information contained in a consumer report regarding an account or other relationship with the furnisher that bears on the consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living.

98. These provisions do not apply to a furnisher if the direct dispute relates to:

99. • the consumer's identifying information (other than a direct dispute relating to a consumer's liability for a credit account or other debt with the furnisher) such as name, date of birth, SSN, telephone number, or address;

100. • the identity of past or present employers;

101. • inquiries or requests for a consumer report;

102. • information derived from public records, such as judgments, bankruptcies, liens, and other legal matters (unless provided by a furnisher with an account or other relationship with the consumer);

103. • information related to fraud alerts or active duty alerts; or

104.   • information provided to a consumer reporting agency by another furnisher; or

105.   • the furnisher has a reasonable belief that the direct dispute is submitted by, is prepared on behalf of the consumer by, or is submitted on a form supplied to the consumer by, a credit repair organization [3].

106.   Under any of these circumstances, the furnisher is not required to investigate the dispute (and these circumstances render the dispute "frivolous or irrelevant" as discussed below).

107.   The consumer is required to submit a dispute notice to the furnisher: (i) at the furnisher's address indicated by the furnisher on the consumer report; (ii) at a location clearly and conspicuously specified by the furnisher for submitting direct disputes provided in writing or electronically (if the consumer has agreed to the electronic delivery of information from the furnisher); or (if not provided as indicated above) at any business address of the furnisher.

108.   The dispute notice must include sufficient information to identify the account or other relationship, the specific information in dispute together with an explanation, and all supporting documentation or other information reasonably required to substantiate the dispute. This may include a copy of the disputed portion of the consumer report, a police report, affidavit, court order; or account statements.

109.   After receiving the notice, the furnisher must conduct a reasonable investigation and review the relevant information provided. The investigation must be completed and reported to the consumer within the same period that a CRA is subject to under its reinvestigation duty (30 days with a possible extra 15 days) [4]. If the investigation results in a finding that the information reported was inaccurate, the furnisher must

promptly notify each CRA to which the furnisher provided the information and provide any correction necessary to make the information accurate.

110.   A furnisher is not required to investigate a direct dispute if the furnisher has reasonably determined that the dispute is "frivolous or irrelevant." This exception applies if the consumer did not provide sufficient information to investigate the disputed information, or the furnisher had previously handled the same dispute properly. (A direct dispute is not substantially the same if it includes new information not included in the earlier dispute). These examples are not intended to be exhaustive.

111.   The furnisher must notify the consumer within five business days after making a determination that a dispute is frivolous or irrelevant by mail or (if authorized by the consumer for that purpose) by any other means available to the furnisher. The notice must include the reasons for the determination and identify any information required to investigate the disputed information. It is allowable that the notice consist of a standardized form describing the general nature of such information. The Agencies note that the FTC, when it next updates its General Summary of Consumer Rights, will include consumers' direct dispute rights in the summary.


112.   **Guidelines**

113.   Each of the Agencies provides an Appendix to its respective Final Rule entitled, "Interagency Guidelines Concerning The Accuracy And Integrity Of Information Furnished To Consumer Reporting Agencies." The guidelines include more detailed procedures and guidance on all aspects of the obligations in the Final Rule. In the preamble to the Final Rule, the Agencies disclaim a "one-size-fits-all" approach requiring

all furnishers to implement all of the guidelines. As discussed, a furnisher's policies and procedures should be appropriate to the nature, size, complexity, and scope of its activities.

114.   1.   No specific retention period is prescribed in the Final Rule or guidelines. Records must be kept for "a reasonable period of time, not less than any applicable recordkeeping requirement, in order to substantiate the accuracy of any information about consumers it furnishes that is subject to a direct dispute. Guidelines Section III.c.

115.   2.   The Agencies consider that a key factor for evaluating creditworthiness is credit utilization. Omission of a credit limit for an account results in credit evaluators either ignoring credit utilization or using a substitute measure for the credit limit, such as the highest balance, which may result in a higher estimate of credit utilization.

116.   3.   The term is defined in 15 U.S.C. 1679a(3) as "any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of—(i) improving any consumer's credit record, credit history, or credit rating; or (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i)." For purposes of the Final Rule, the term also includes 501c-3 organizations that are credit repair organizations

117.   4.   The actual period is the limit set forth in 15 U.S.C. 1681i(a)(1) applicable to a consumer reporting agency's reinvestigation duty—that is, 30 days with a limited 15-day extension.

**118.    Conclusion**

119.    WHEREFORE, in consideration of all reasons outlined in Plaintiff's Motion in

Opposition to Defendants Capital One Auto, Motion to Dismiss, Plaintiff respectfully

moves this Honorable Court to deny Defendants Motion to Dismiss.

120.    Respectfully submitted this 7th Day of January 2010.

Edward O'Finnegan, Plaintiff ProSe'
1014 Washington St SE
Albuquerque, NM 87108
Edward.OFinnegan@gmail.com
505.688.4530

## CERTIFICATE OF SERVICE

I, the Plaintiff, Edward O'Finnegan, Pro'Se, does hereby certify that a copy of the Motion in

Opposition to Dismiss was sent to the Defendant Capital One Auto through their attorneys of

record Stan Harris, Modrall Sperling, 500 Fourth St NW, Suite 1000, Albuquerque, NM 87102,

and Kevin D. Quigley & John Craiger, Quarles & Brady LLP, Two North Central Ave, Phoenix,

AZ 85004 for the purpose of satisfying the requirement for Notice and Service and was sent via

USPS Mail pursuant to Federal Rules of Civil Procedure 4 (c) (2) (c) (i). This will also be

available to any and all PACER ECF participants and will serve as Notice and Service.

Edward O'Finnegan, Plaintiff ProSe'
1014 Washington St SE
Albuquerque, NM 87108
Edward.OFinnegan@gmail.com
505.688.4530


**UNITED STATES**
**POSTAL SERVICE.**

Date: 07/26/2010

Edward O'Finnegan:

The following is in response to your 07/25/2010 request for delivery information on your
Certified Mail(TM) item number 7009 2820 0002 0724 8762. The delivery record shows that
this item was delivered on 07/26/2010 at 12:04 PM in ATLANTA, GA 30348 to J ALLISTON.
The scanned image of the recipient information is provided below.

Signature of Recipient:

Address of Recipient:

Thank you for selecting the Postal Service for your mailing needs. If you require additional
assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service


**UNITED STATES**
**POSTAL SERVICE**

Date: 07/26/2010

Edward O'Finnegan:

The following is in response to your 07/25/2010 request for delivery information on your Certified Mail(TM) item number 7009 2820 0002 0724 7628. The delivery record shows that this item was delivered on 07/26/2010 at 11:06 AM in CRUM LYNNE, PA 19022 to E NEUMAN. The scanned image of the recipient information is provided below.

Signature of Recipient:

Address of Recipient:

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service

 **UNITED STATES**
**POSTAL SERVICE.**

Date: 01/07/2011

Edward O'Finnegan:

The following is in response to your 01/07/2011 request for delivery information on your Certified Mail(TM) item number 7009 2820 0002 0724 8779. The delivery record shows that this item was delivered on 07/27/2010 at 11:37 AM in ALLEN, TX 75013 to J SWANSON. The scanned image of the recipient information is provided below.

Signature of Recipient:

Address of Recipient:

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service

 **UNITED STATES**
**POSTAL SERVICE**®

Home ¦ Help ¦ Sign In

Track & Confirm          FAQs

## Track & Confirm

### Search Results

Label/Receipt Number: **7010 1060 0001 2611 1845**
Expected Delivery Date: **August 26, 2010**
Class: **First-Class Mail**®
Service(s): **Certified Mail**™
Status: **Delivered**

Your item was delivered at 8:58 am on August 26, 2010 in PITTSBURGH,
PA 15230.

Information on this item has been restored from offline files and will be
available online for 30 days from 01/07/2011.

Detailed Results:

• **Delivered, August 26, 2010, 8:58 am, PITTSBURGH, PA 15230**
• **Notice Left, August 26, 2010, 7:08 am, PITTSBURGH, PA 15230**
• **Arrival at Unit, August 26, 2010, 7:06 am, PITTSBURGH, PA 15219**
• **Acceptance, August 23, 2010, 8:31 am, ALBUQUERQUE, NM 87108**

Track & Confirm

Enter Label/Receipt Number.

                                                          Go >




 **UNITED STATES POSTAL SERVICE**

Date: 09/04/2010

Edward O'Finnegan:

The following is in response to your 09/04/2010 request for delivery information on your Certified Mail(TM) item number 7010 1060 0001 2611 5775. The delivery record shows that this item was delivered on 09/03/2010 at 10:56 AM in PLANO, TX 75093 to J BOWDITCH. The scanned image of the recipient information is provided below.

Signature of Recipient:



Address of Recipient:



Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service